[No. 20737.    Department One. — March 24, 1891.]

## THE PEOPLE, RESPONDENT, v. HANFORD L. GOR-DON, APPELLANT.

CRIMINAL LAW — ASSAULT TO MURDER — EVIDENCE — SHIFTING OF BURDEN OF PROOF — CONSTRUCTION OF PENAL CODE. — Section 1105 of the Penal Code, relative to the shifting of the burden of proof in cases of homicide, has no application to a charge of assault with intent to commit murder.

ID. — ERROR WITHOUT PREJUDICE — INSTRUCTION AS TO BURDEN OF PROOF. — An erroneous instruction to the jury, upon the trial of a defendant charged with an assault with intent to commit murder, to the effect that if the assault and the intent are proven, the burden of proving circumstances of mitigation, justification, or excuse therefor devolves upon the accused, unless the proof of the prosecution tends to show that the crime was of a lower degree than that charged, or that the defendant was justified or excused, although ground for reversal if the defendant were convicted of the crime charged, is not prejudicial, if he is convicted of a lower offense.

ID. — ACQUITTAL OF OFFENSE CHARGED — CONVICTION OF ASSAULT WITH DEADLY WEAPON. — A verdict of guilty of the crime of assault with a deadly weapon is an acquittal of the charge of an assault with the intent to commit murder.

ID. — INSTRUCTIONS — STATEMENT OF SUBSTANCE — EVIDENCE — PROVINCE OF JURY — CONSTITUTIONAL LAW. — It is for the jury to determine what is the substance and effect of the testimony; and it is an invasion of their province, and a violation of the constitutional prohibition, for the judge to state his impression of the substance and effect of the testimony of the prosecuting witness, without properly stating its contents, and to tell them that other witnesses corroborate, in whole or in part, certain statements of the prosecuting witness in regard to the commission of the offense.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*H. V. Morehouse*, and *H. D. Tuttle*, for Appellant.

*Attorney-General Johnson*, *D. W. Herrington*, and *S. G. Tompkins*, for Respondent.

GAROUTTE, J. — This is an action charging the defendant with an assault with a deadly weapon upon the

person of one Charles H. Potter, with intent to kill and
murder said Potter.    The defendant was convicted of an
assault with a deadly weapon, and fined two thousand
five hundred dollars, and in default of the payment
thereof, it was ordered that he be imprisoned in the
county jail of Santa Clara County at the rate of one
day for each four dollars of said fine, and not exceed-
ing in the aggregate 625 days.    This appeal is from
the judgment, and the   order   denying   defendant's
motion for a new trial.

Among the grounds relied upon by defendant's coun-
sel to support this appeal, it is claimed the court mis-
directed the jury as to the law of the case.

The court gave the jury the following instruction:
" Upon a trial for an assault to commit murder, the as-
sault and the intent being proved, the burden of prov-
ing circumstances of mitigation, justification, or excuse
therefor devolves upon the accused, unless the proof upon
the part of the prosecution tends to show that the crime
committed only amounted to an assault with a deadly
weapon, with intent to inflict upon the person of the
prosecuting witness a great bodily injury, or of a simple
assault, or that the defendant was justified or excused."

The learned judge of the lower court has attempted by
the foregoing instruction to apply the principle found
in section 1105 of the Penal Code, as to the shifting of
the burden of proof in cases of homicide, to the present
case,—a charge of assault with intent to commit murder.
Such an application of that section of the code cannot
be made, for it only treats of cases of homicide.    (*People*
v. *Cheong Foon Ark*, 61 Cal. 527; *People* v. *Rodrigo*, 69 Cal.
605; *People* v. *Mize*, 80 Cal. 45; *Com.* v. *McKie*, 1 Gray,
61; 61 Am. Dec. 410.)

This principle of the shifting of the burden of proof
in cases of homicide is purely a creation of the statute,
and must be limited to the words of the statute.    It is
based upon the theory that certain presumptions shall

take the place of evidence, and was not intended to change the rule of evidence.

But, aside from any authority upon the question, it does not appear that the burden of proof could possibly shift at any stage of the proceedings, or under any state of circumstances, in a case similar to the one under discussion.

The presumptions which follow from the act of killing in the case of homicide, and which are impliedly recognized by section 1105, are inapplicable to and have no relationship with the offense of assault with intent to commit murder, and this is fully exemplified by a cursory examination of the instruction heretofore quoted; for such an examination proves the instruction to be misleading, contradictory, and practically meaningless.

The language of the instruction is, "the *assault* and the *intent* being proved, the burden of proving circumstances of justification, excuse, etc., rest upon the accused, unless," etc. If the assault and the intent to commit the murder are proven, the offense is made out perfect and complete in every portion; and the foregoing instruction can only be correct in the sense that when the prosecution has proven the defendant guilty, it behooves him to do something in his own behalf, or suffer the consequences of his proven guilt.

The serious vice in the instruction then follows: "Unless the proof on the part of the prosecution tends to show that the crime committed only amounted to an assault with a deadly weapon, with intent to inflict upon the person of the prosecuting witness a great bodily injury, or of a simple assault, or that the defendant was justified or excused." This proviso or exception never could exist in connection with the previous assumption, that the guilt of the defendant of the crime of assault with intent to commit murder had already been established by the evidence of the prosecution, and it

has no signification whatever when taken in connection with the former part of the instruction.

If the defendant had been convicted of an assault with intent to commit murder, he would have been entitled to a new trial, by reason of error in the foregoing instruction, but having been found guilty of the crime of "assault with a deadly weapon" only, he is acquitted of the higher offense, to which the instruction alone is pointed, and consequently is acquitted of the intent to murder, and necessarily was not prejudiced thereby. (*People* v. *Swift*, 66 Cal. 349; *People* v. *O'Neal*, 67 Cal. 378; *People* v. *Boling*, 83 Cal. 380.)

The court gave the following instruction to the jury: "The prosecutor, Potter, has testified, in substance, that at the time in question he was sitting in front of the Lamollo House, in a chair on the sidewalk, unarmed; that the defendant came up and addressed him in a *sharp tone,* and immediately made a demonstration to draw a pistol upon him; that he, Potter, thereupon sprang up from his chair and grappled with the defendant and struck him in the face. . . . . Other witnesses corroborate in whole or in part that portion of the prosecutor's statement of the transaction after the conflict had commenced."

All the testimony of the prosecuting witness, Potter, as to these matters, is as follows:—

*Examination in chief.* — "I was seated in a chair in front of the Lamollo House, on Santa Clara Street, near San Pedro Street. I was seated looking east, and thinking about something. I had been there about twelve or fifteen minutes, when some one came up and addressed me as 'Ah, there!' or 'Hello, there.' I looked quick, and H. L. Gordon, the defendant, was standing about two feet from me. As I jumped around in this way, he started for his overcoat pocket with his right hand. I immediately jumped up and grabbed him. . . . . I saw

him make a motion for his side coat pocket, and I immediately grabbed his hand."

*Cross-examination.*—"The first time I saw him was when he was standing in front of me at the Lamollo House. I first saw defendant when he got in front of me on the sidewalk, about three or four feet from me. . . . . When he came up he said: 'There,' or 'Ah, there,' or 'Hello, there.' I don't know which, but I heard the word 'there,' which was significant. When he spoke to me I had my legs crossed, and I looked around, and he immediately attempted to step back, and started his right hand for the side of his overcoat pocket. I raised up and grabbed him, etc. . . . . I grabbed him with my left hand on his right wrist as he had his hand in his pocket. . . . . He was trying to get his pistol out of his pocket. He had his right hand in his pocket. . . . . The first time I saw Gordon, he was endeavoring to get his pistol in his hand."

It appears by the record that there was a wide divergence between the testimony of the prosecuting witness and the defendant as to the matters which occurred at the immediate inception of the difficulty between those parties; and as the defendant in this case insisted at the trial that the shooting was done in self-defense, it was a matter of vital importance to the jury to know who began the affray, and this was essentially and solely the province of the jury to determine from the testimony of all the witnesses.

While section 19, article 6, of the constitution allows judges to state the testimony to the jury, yet this principle has always been strictly enforced, and necessarily so, for that judges must not charge juries with respect to matters of fact is a constitutional prohibition which has been jealously guarded and rigidly upheld from the earliest judicial history of the state.

In the case of *People* v. *Williams*, 17 Cal. 147, Justice Baldwin used the following language, which is as

true now as when used in that early case: " The experience of every lawyer shows the readiness with which a jury frequently catch at intimations of the court, and the great deference which jurors pay to the opinions and suggestions of the presiding judge, especially in a closely balanced case, when they can thus shift the responsibility of a decision of the issue from themselves to the court; a word, a look, or a tone, may sometimes in such cases be of great or even of controlling influence.   A judge cannot be too cautious in a criminal trial in avoiding all interference with the conclusions of the jury upon the facts."

As we have seen in this case, the judge undertook to state to the jury the substance of the prosecuting witness's testimony, which is a very dangerous thing to do; for it is essentially the province of the jury to decide what the substance of the prosecuting witness's testimony was.   Selecting what constitutes the substance of a witness's testimony is to a greater or less extent a matter of opinion, and the jurors and the judge may have held widely different views as to what the substance of the prosecuting witness's testimony really was in this case.

In the instruction under consideration, the court states that the witness Potter testified "that the defendant came up and addressed him in a *sharp* tone, and immediately made a demonstration to draw a pistol upon him." This goes to the very gist of the main inquiry in the case; and while the foregoing may be, in a certain sense and to a limited extent, the substance of what the witness said happened at the commencement of the trouble, yet the witness in his testimony says that " some one came up and addressed me as ' Ah, there,' or ' Hello, there.' "   Now, *some one* is not necessarily the defendant, and it appears nowhere in the testimony of the witness that he was addressed in a *sharp* tone of voice.   Now, this is significant; for if the remark was made in a "*sharp* tone," it might indicate anger, animosity, and ill-will

toward the witness, and it was for the jury to decide whether the tone of defendant's voice was sharp or not.

Again, the court makes the witness say, " And *immediately* made a demonstration to draw a pistol upon him." Now, the witness really did say, " As I jumped around in this way, he started for his overcoat pocket with his right hand"; and surely it is for the jury, and the jury alone, to determine the full meaning of these words as actually used by the witness.

And if in other portions of the witness's testimony he made statements contradictory to those just quoted, or which more fully coincide with the views of his testimony as expressed by the court in his charge to the jury, then it is pre-eminently the duty of the jury to say from all his statements what is the substance of his testimony as to what did occur at the moment when these two parties met.

At the conclusion of this instruction to the jury, the court used this language: " Other witnesses corroborate in whole or in part that portion of the prosecutor's statement of the transaction after the conflict had commenced.

It appears the parties came to blows, were separated, and then the shooting followed. This is the very moment of time at which the crime was committed, if committed at all, and for the court to tell the jury that the testimony of the witness Potter as to these important matters is corroborated by other witnesses surely prejudiced the rights of the defendant to his great disadvantage, and violated that constitutional prohibition that juries must not be charged as to matters of fact.

Upon an examination of the other points relied upon by appellant, we find no error.

For the foregoing reasons, let the judgment be reversed, and the cause remanded for a new trial.

HARRISON, J., and PATERSON, J., concurred.