[Crim. No. 6659.    Second Dist., Div. Three.    Jan. 29, 1960.]

THE PEOPLE, Respondent, v. EUGENE J. BUTTER-FIELD, Appellant.

J. Thomas Russell for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David B. Allen, Deputy Attorney General, for Respondent.

FORD, J.—Defendant Eugene J. Butterfield appeals from the order denying his motion for a new trial and from "the sentence and judgment of the court" which we construe to be an appeal from the judgment. The order granting probation is deemed to be the final judgment for the purpose of this appeal. (Pen. Code, § 1237.)

In each of the two counts of the information, the defendant was charged with the crime of "assault with a deadly weapon with intent to commit murder in violation of Section 217, Penal Code of California," a felony. In count I, the person alleged to have been so assaulted was Janet Dorrine Byzek, and in count II, John Wallace Ross.

John Ross, one of the two victims of the assault, testified at the trial that on the evening of July 9, 1958, he became involved in a fight with the appellant in the Garden of Allah parking lot. The fight was observed by Janet Byzek, the other victim of the assault, and by Grady Smith, a bus driver who was seated in his bus. Paul Christiansen, the parking lot attendant, also observed the fight.

After the fight terminated, Ross and Mrs. Byzek left the parking lot and walked south along Crescent Heights Boulevard. Miss Nancy Smith testified that, from a parked car in which she was seated, she noticed two people walking down the street. "[T]he girl was pulling him up the street, and he would pull her down." Miss Smith also noticed a car, moving

slowly along the side curb, following them. Mrs. Byzek testified that the appellant's car, a blue 1957 Oldsmobile, pulled up by the side of her and Ross, but that she did not remember what was said. Miss Dorothy Norman testified that she observed from the upstairs window of her home a man and a woman walking down the street and talking loudly. She also noticed a blue 1957 Oldsmobile make a U-turn in the street. Both Miss Norman and Miss Smith testified that the car turned into a driveway just as Ross and Mrs. Byzek were walking across it. The driver paused and then, accelerating his motor, drove into the driveway, striking Ross and Mrs. Byzek. Mrs. Byzek testified that when she fell off the hood, the car was then stopped, backed up, and was driven at her again. Ross recognized the driver to be the appellant Butterfield.

Later, three California State Highway patrolmen arrested the appellant at his apartment. They asked the appellant about his car and his whereabouts that evening. The appellant said that his car had been stolen and that the only time he had left his apartment was to get his laundry. The appellant offered no explanation as to why he had his car keys. The car was observed to be parked in the parking area east of the appellant's apartment building and the car hood was still warm. Fingerprints, later ascertained to be those of Mrs. Byzek, were lifted from the hood of the car the next morning by Deputy Sheriff Robert Wolf, a fingerprint expert. The car had been washed at a service station the previous evening.

The officers questioned the appellant en route to the West Hollywood Sheriff's substation. When asked what had occurred, he responded, "I know what you are trying to do. I was an M. P. for three years, myself, and I am not going to say anything." At the substation, Deputy Sheriff Ostraff summarized for the appellant the statements of the witnesses including that of Mr. Ross. The appellant said that he would rather not say anything about it.

The jury was properly instructed as to the elements necessary to be shown to constitute the offense of assault with a deadly weapon. An instruction was also given to the effect that the jury could find the defendant guilty of any offense, the commission of which was necessarily included in that with which the defendant was charged, if the jurors found that the evidence supported such a verdict under the court's instructions. In that instruction, the jury was further told that "the offense of Assault with a deadly weapon with intent to

commit murder,[1] of which the defendant is charged in counts 1 and 2 of the information, necessarily includes the crime of Assault with a deadly weapon,[2] or an assault by any means likely to produce great bodily injury.'' A further instruction was given as follows: ''When the information charges that the defendant committed an assault with a deadly weapon with intent to commit murder, if the jury should find that he committed the assault with a deadly weapon but that he did not do so with a specific, preconceived intent to kill, the defendant may be found guilty only of the lesser offense, namely, assault with a deadly weapon.''

Appellant's chief contention is that the jury should not have been instructed that the offense of assault with a deadly weapon was included within that charged in each count of the information. He asserts that, in this case, that matter should not have been submitted to the jury at all. But, before discussing that contention, appellant's attack upon the verdicts will be considered.

The trial court interpreted each verdict as being a finding of guilt of the offense of assault with a deadly weapon. Appellant argues that each verdict was unintelligible, failed to reflect an offense, and was a nullity. The body of the verdict as to count I (italics being used to denote insertions by longhand in the printed form) was as follows: ''We, the Jury in the above entitled action, find the Defendant *Eugene J. Butterfield* guilty of *a violation of Sec. 245 Penal Code, a lessor* [sic] *but included offense of the offense Assault with a deadly weapon*[3] as charged in *Count I of* the information.'' The verdict as to count II was in the same form except for the reference to that count instead of count I.

Each verdict was obviously a finding by the jury that the defendant was guilty of the offense of assault with a deadly weapon which offense, under the instructions, was included within that charged in the information of assault with a deadly weapon with intent to commit murder. Discussion between

[1] Section 217 of the Penal Code is as follows: ''Every person who assaults another with intent to commit murder, is punishable by imprisonment in the state prison not less than one nor more than fourteen years.''

[2] Section 245 of the Penal Code is as follows: ''Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the State prison not exceeding ten years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars, or by both such fine and imprisonment.''

[3] The language ''Assault with a deadly weapon'' was on a line by itself.

court and counsel after the return of the verdicts and after the jurors had been excused indicates that the words "assault with a deadly weapon" were added, for the sake of completeness, after the forms had been originally prepared but before submission to the jury. It is, of course, clear that more care should have been taken in the preparation of the forms of verdict so that a question such as is now presented would not arise. But it does not appear that the jury was confused. Counsel for appellant apparently understood what was intended by the verdicts because, after they were read, he stated : "If the Court please, at this time the defense requests that the jury be polled on the lesser included offense." No objection was then made to the form of the verdicts. When read in the light of the record, there is no lack of clarity as to the determination of the jury. (See *People* v. *Hatch*, 163 Cal. 368, 383 [125 P. 907].) As said in *People* v. *Holmes*, 118 Cal. 444, at page 448 [50 P. 675): "There is no good reason why the verdict of a jury should not have a reasonable construction and be given effect according to its manifest intention." (See also *People* v. *Sprado*, 72 Cal.App. 582, 588 [237 P. 1087] ; *People* v. *Mitchell*, 61 Cal.App. 569, 574 [215 P. 117] ; *People* v. *Tognola*, 83 Cal.App. 34, 37 [256 P. 455].)

We turn now to appellant's main contention. He argues that no conviction of the offense of assault with a deadly weapon (Pen. Code, § 245) was proper in this case because the counts of the information which charge him with the offense of assault with a deadly weapon with intent to commit murder (see Pen. Code, § 217) fail to mention or describe the deadly weapon alleged to have been used. He relies on *People* v. *Marshall*, 48 Cal.2d 394 [309 P.2d 456]. But that case does not sustain his position. Therein the Supreme Court held that whether an offense is necessarily included in a charge within the meaning of section 1159 of the Penal Code is to be determined by resort to the specific language of the accusatory pleading rather than to the language of the statute defining the offense charged. (48 Cal.2d 394, at p. 405.) In the present case, each count was so framed as to include within its pleading the allegation that an assault with a deadly weapon had been made. ▮▮▮ It is not necessary to describe the deadly weapon in an information charging violation of section 245 of the Penal Code. (*People* v. *Jackson*, 53 Cal.2d 89, 94 [346 P.2d 389] ; *People* v. *De La Roi*, 23 Cal.2d 692, 697 [146 P.2d 225, 151 P.2d 837].) ▮▮▮ It is well-established that the charge of assault with a deadly weapon is necessarily in-

cluded in the charge of assault with a deadly weapon with intent to commit murder. (*People* v. *Mock Ming Fat,* 82 Cal.App. 618, 620 [256 P. 270] ; *People* v. *Casserio,* 16 Cal. App.2d 223, 226 [60 P.2d 505].) There is nothing in the reasoning of *People* v. *Marshall, supra,* which requires any different conclusion. In fact, the following pertinent statement is therein made (48 Cal.2d 394, 403-404) : "It is not unusual for a prosecutor to charge in one count the elements of two kinds of aggravated assault defined by two separate sections of the Penal Code, assault with intent to commit murder (Pen. Code, § 217) and assault with a deadly weapon (Pen. Code, § 245). In this situation, the appellate courts have expressly recognized that the yardstick for determining 'included' offenses is the language of the accusatory pleading. (*People* v. *Gordon* (1893), 99 Cal. 227, 229 [33 P. 901] [an earlier opinion in this case, *People* v. *Gordon* (1891), 88 Cal. 422 [26 P. 502], shows that the defendant was specifically charged with an assault with a deadly weapon with intent to commit murder] ; *People* v. *Lightner* (1874), 49 Cal. 226, 228 ; *People* v. *Casserio* (1936), 16 Cal.App.2d 223, 226 [60 P.2d 505] ; see *People* v. *Arnett* (1899), 126 Cal. 680, 681 [59 P. 204].) If a defendant were charged in statutory language with assault 'with intent to commit murder' (Pen. Code, § 217) and, separately, with assault 'with a deadly weapon' (Pen. Code, § 245), the essential legal elements of neither offense charged would be 'necessarily included' in the elements of the other (although both offenses charged might in fact be committed by the same act and, hence, be subject to the provisions of section 654 of the Penal Code) ; therefore, the term 'included offense,' as used in the foregoing cases which determine that assault with intent to commit murder or assault with a deadly weapon *is* 'included' in a charge of assault 'with a deadly weapon with intent to commit murder' must refer to offenses included in the language of the pleading, not to offenses necessarily included in the language of the statutes."

[■] Appellant's final claim of error is that the prosecution should not have been permitted to make inquiry on cross-examination of the defendant as to conversations which various officers had with the defendant to which no reference had been made on direct examination. In evaluating this contention, reference must be made to the nature of appellant's defense. That defense was that he was not conscious of his acts because of a condition brought about by injuries which he received in the fight in the parking lot. On direct examination, appellant

testified that he remembered nothing which occurred between the time he asked Mr. Ross in the Garden of Allah parking lot to join him inside for a drink and the time he opened the door of his apartment and found three officers standing in the doorway. He was asked the direct question, "Did you assault either one or both of these people, to wit, Janet Byzek and Mr. Ross, with intent to kill them?" His answer was, "By no means." On cross-examination, appellant testified that he remembered telling the officers at his apartment that his automobile had been stolen when that was not the fact and the car keys were in the apartment. With respect to questions relating to a conversation on the way to the sheriff's station, he testified that he did not recall saying that he knew what they were trying to get him to do and he was not going to tell them anything. The last question on cross-examination was, "Now, did you ever, at any time after this incident occurred, tell any one of the officers that you talked to that you could not remember what had happened after the fight?" The answer was that he had not done so.

In the light of appellant's testimony in support of his defense that he was not conscious of any of his acts after the fight, it was clearly pertinent to inquire of him on cross-examination as to conduct and statements on his part which, if established, reasonably appeared to be inconsistent with such defense. "Any question which would have the tendency to elicit from him the whole truth about any matter upon which he had been examined in chief, or which would explain, or qualify, or destroy the force of his direct testimony, whether it be to give the whole of a conversation or transaction of which he had given only a part, or to show by his own admissions that he had made contrary statements, or that his conduct had been inconsistent with the statements given in his direct testimony, and thus throw discredit upon them, would be legitimate cross-examination." (*People* v. *Gallagher,* 100 Cal. 466, 475 [35 P. 80]; see also *People* v. *Westek,* 31 Cal.2d 469, 476 [190 P.2d 9], and cases therein cited.)

That appellant's concept of the scope of permissible cross-examination of a defendant in a criminal case is too narrow is evident from the discussion of the Supreme Court in *People* v. *Zerillo,* 36 Cal.2d 222, at pages 227-229 [223 P.2d 223]: "Section 1323 of the Penal Code provides: 'A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offers himself as a witness, he may be cross-examined by the counsel for the people as to

all matters about which he was examined in chief. . . .' This does not mean that the cross-examination must be confined to a mere categorical review of the matters, dates or times mentioned in the direct examination. (See *People* v. *Wilson,* 25 Cal.2d 341, 351 [153 P.2d 720] ; *People* v. *King,* 13 Cal.2d 521, 527 [90 P.2d 291] ; *People* v. *Mammilato,* 168 Cal. 207, 213-214 [142 P. 58] ; *People* v. *Buckley,* 143 Cal. 375, 388-389 [77 P. 169] ; *People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338] ; *People* v. *Dole,* 122 Cal. 486, 491 [55 P. 581, 68 Am.St.Rep. 50].) It may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by him on his direct examination. (*People* v. *Kynette,* 15 Cal.2d 731, 753 [104 P.2d 794] ; *People* v. *Creeks,* 170 Cal. 368, 379 [149 P. 821] ; *People* v. *Buckley,* 143 Cal. 375, 388-389 [77 P. 169].) Defendant argues that the 1935 amendment to section 1323, giving counsel the power to comment on 'the failure of the defendant to deny any evidence or facts in the case against him,' necessarily indicates that a defendant may testify and yet neither have to explain or deny facts introduced against him. This is true only to the extent that such 'evidence or facts' are not within the scope of his direct examination, since the section expressly states that a defendant 'may be cross-examined . . . as to all matters about which he was examined in chief.' It is well settled that the section as it existed prior to 1935 did not have the effect of confining the cross-examination of an accused to any narrower limits than in the case of any other witness (*People* v. *Rozelle,* 78 Cal. 84, 92-94 [20 P. 36] ; *People* v. *Gallagher,* 100 Cal. 466, 476 [35 P. 80] ; *People* v. *Dole,* 122 Cal. 486, 491 [55 P. 581, 68 Am.St.Rep. 50] ; *People* v. *Creeks,* 170 Cal. 368, 379 [149 P. 821]), and there is nothing in the 1935 amendment to indicate any intent to establish a special rule governing the scope of cross-examination of a defendant in a criminal case. (See 3 Wharton on Criminal Evidence [11th ed. 1935], § 1323.) If a defendant takes the stand and makes a general denial of the crime with which he is charged the permissible scope of cross-examination is very wide. (See *People* v. *Gallagher,* 100 Cal. 466, 473-476 [35 P. 80] ; *People* v. *Creeks,* 170 Cal. 368, 378-380 [149 P. 821].) Moreover, as stated in *People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338], 'A defendant cannot, by testifying to a state of things contrary to and inconsistent with the evidence of the prosecution, thus indirectly denying the testimony against him, but without testifying expressly with relation to the same facts, limit the cross-examination to the precise facts

concerning which he testifies. He can be cross-examined with respect to facts or denials which are necessarily implied from the testimony in chief, as well as with respect to facts which he expressly states.' " (See also *People* v. *Weiss*, 50 Cal.2d 535, 561 [327 P.2d 527].)

The order denying the motion for a new trial and the judgment are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied February 25, 1960, and appellant's petition for a hearing by the Supreme Court was denied March 23, 1960.