[Crim. No. 1732.   Fourth Dist.   June 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. L. C. NICHELSON, Defendant and Appellant.

---

*Assigned by Chairman of Judicial Council.

Ernest M. Lopez, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, C. A. Collins and David Rothman, Deputy Attorneys General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant was charged in two counts with a felony, in violation of Penal Code, section 217 (assault with a deadly weapon with intent to commit murder) on June 23, 1961; in count one as against Charles Scott and in count two as against Joe Holland. He entered a plea of not guilty to both counts. Defendant's motion to dismiss and to enter a directed verdict of not guilty on the ground that no specific intent had been established were both denied. He was found guilty by a jury of the lesser included offense of assault with a deadly weapon on both counts.

### FACTS

The complaining witnesses, Scott and Holland, lived in Banning. They knew defendant, who also lived there. On the evening of June 23, 1961, defendant was at Holland's home with Scott, Holland and Mrs. Holland. Prior thereto, on that day, Nichelson and Scott were driving a car, stopped to pick up Holland, and Nichelson and Holland started arguing. Holland accused defendant of being at his wife's home and ''fooling around'' while he (Holland) was away. Holland testified that he told defendant what his wife had said about it; that they went to her home to hear what his wife said and Holland stated to his wife, ''Mr. Nichelson says

he didn't break in the bathroom on you," and his wife said, "Well, he did" and then the argument started again and defendant pulled his knife and Holland testified, "I hit him with a chair"; that others tried to stop the fight and he warned defendant about "not coming around and fooling with my wife"; that he then demanded of defendant that he give him back the money defendant had borrowed from him (98 cents); that defendant left and obtained some money, loaded his revolver and came back with it in his pocket; that defendant came back in the driveway, walked up to Holland and said, "Here's your money," handed him a one-dollar bill and Holland returned two cents in change, and then defendant walked up to him and said, "You know you hit me with that chair" and about that time a Mr. Elisha Green patted defendant on the back and tried to get him to settle down and defendant told Green to take his hands off him; that about that time Scott started tussling with defendant and defendant pulled a gun and shot at him (Holland) and he fell, thinking he was shot; that he believed that defendant missed him because he had fallen; that several other shots were fired by defendant and he saw Scott lying on the ground; and that Scott had been shot in the shoulder and in the leg.

Mrs. Holland testified generally to the same thing and that when defendant came to her home the second time he said to her husband, "You hit me with the chair" and that he had "a score to settle," and as he walked up to her husband there was a bulge (indicating a gun) on his person, and it looked like defendant was going for it, and Scott grabbed defendant and as Holland started toward defendant, he (Holland) slipped and fell and a shot was fired and he was on the ground; that two more shots were fired and Scott started to run; and that no one but defendant had a weapon. As to the first incident, she said that defendant pulled a knife and that her husband struck him with the chair.

Scott testified generally about the argument in his car and the accusation made in front of Mrs. Holland; that defendant pulled a knife and then Holland hit him with a chair and the fight was broken up; that defendant left and returned with some money and the argument started again; that defendant backed up against the wall and, putting his hand down toward his left front pocket, pulled out his gun, and Holland was directly in front of him; that defendant shot directly at Holland; that he later found the bullet had glanced

off the wall in line with Holland; that he then grabbed defendant's hand and tried to take the gun and he then felt a "wallop" in the chest and he started to run, thinking he was shot; that he felt another shot and it hit his leg and he dropped to the ground and was later taken to a hospital. Defendant was apprehended by the police and the gun was turned over to them by defendant.

Defendant's signed statement was received in evidence. He said that he had been drinking home-made beer all day; that he visited Holland's wife that day to take her some apples, because she made such good apple pie; that she was crying and was pregnant; that she threw a glass of water in his face and he left; that Holland spoke to him about what Mrs. Holland had told him; that he wanted to straighten out the story and they went to ask her about it; that he asked Mrs. Holland what he had done wrong and she said that he had come into her bedroom and she threw water in his face; that then Holland hit him with a chair so he pulled his knife out of his pocket; that Holland demanded the return of money he had borrowed and that he went for it and put the revolver in his pocket; that he returned the money and told Holland to stand back and someone slugged him three times so he put the revolver back in his pocket; that he didn't get the gun with any intention of shooting anyone; that when these men fell on him he pulled the gun and shot and he believed someone was shot but he wasn't sure and that he then took off running.

Defendant produced witnesses indicating that Holland first threw the chair and then defendant drew a knife; that thereafter defendant returned with the money and as he was about to leave Scott hit defendant and then he (Scott) saw defendant with a gun and three shots were fired.

Defendant testified generally, with some exceptions, in accordance with his written statement above referred to. In describing his return home to obtain the money to pay Holland, he said that en route he met one Otis Pellum and borrowed two dollars from him and then went on to his (defendant's) house to get his revolver and a handful of bullets and he put them in his right-hand back pocket and returned to Holland's home; that when he arrived "they must have thought I had a gun" and "they started running and scattering"; that he gave a one dollar bill to Holland and received two cents in change; that he then backed away from Holland and Scott and Holland rushed toward him and he shot and

believed he hit Holland and then he fired towards Scott because Scott was hitting him. He said only two shots were fired and he later gave himself up to the police. In April of that year, defendant had had a heated disagreement with Scott over money defendant owed to Scott, and he said that Scott threatened him and was looking for a tire iron with which to kill him.

At the close of the evidence, counsel for defendant moved the court to direct the jury to return a verdict of not guilty in favor of defendant because the evidence was insufficient, as a matter of law, to show any intent on the part of defendant to commit murder; that accordingly the giving of an instruction to the jury to the effect that defendant could be convicted of the lesser included offense of assault with a deadly weapon was error, because defendant sought an acquittal if the People failed to prove the guilt of defendant as charged, and that the giving of the additional instruction was an invitation to a compromise verdict and therefore it was error. (Citing such authority as *People* v. *Wilder,* 151 Cal.App.2d 698, 708 [312 P.2d 425]; *People* v. *Wright,* 167 Cal. 1, 4 [138 P. 349]; *People* v. *Washburn,* 54 Cal.App. 124 [201 P. 335]; *People* v. *Thomas,* 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P.2d 97]; *People* v. *Huntington,* 138 Cal. 261 [70 P. 284]; *People* v. *Cota,* 53 Cal.App.2d 455 [127 P.2d 1010]; *People* v. *Kelley,* 24 Cal.App. 54 [140 P. 302].)

The rule is stated in *People* v. *Wright, supra,* 167 Cal. 1, upon which defendant relies, that where the evidence discloses a reasonable ground to believe that the defendant might not have been guilty of murder, but might have been guilty of involuntary manslaughter, the definition of an explanation of this kind of manslaughter should be included in the charge. In *People* v. *Thomas, supra,* 58 Cal.2d 121, relied upon by defendant, a hearing was granted. In *People* v. *Washburn, supra,* 54 Cal.App. 124, the defendant was charged with assault with a deadly weapon but convicted of a lesser included offense, assault. On appeal, it was contended that the trial court committed grievous error by instructing on the lesser included offense. The court held that the error, if any, was regarded as favorable to the defendant, since there was no doubt that the evidence would have amply supported a verdict for the greater offense.

Apparently, defendant concedes that if there was sufficient evidence to support a verdict of guilty as charged, then the trial court was authorized to deny his motion for a directed

verdict in his favor and the giving of the instruction on the included offense would be proper. However, he rests his entire argument on the contention that no corpus delicti had been established and the evidence, as a matter of law, was insufficient to support the charge as made, and that he relied upon a verdict of guilty or not guilty on the charge of assault with a deadly weapon with intent to commit murder and was not interested in the lesser charge.

A careful analysis of the evidence, in our opinion, destroyed defendant's only argument. In this case, the prosecution presumably sought a conviction on the higher offense charged. When the motion for an advised verdict of not guilty was made, there was sufficient evidence before the jury for it to determine whether, as a matter of fact, the elements of the charge had been established. It cannot be said, as a matter of law, that it was deficient. Accordingly, there was properly submitted to the jury the question whether those elements had been established or, if not, whether defendant was guilty of an included offense. Penal Code, section 1159, provides that a defendant may be found guilty of any lesser offense included in the offense charged.

*People* v. *Weaver*, 123 Cal.App. 347 [11 P.2d 69]; *People* v. *Marquez*, 109 Cal.App.2d 447 [240 P.2d 1019]; and *People* v. *Malki,* 181 Cal.App.2d 118 [5 Cal.Rptr. 207], are cases which hold that the established facts provided grounds from which the jury could reasonably infer that specific intent to kill existed. If the facts in those cases justified the inference that the respective defendants had a specific intent to kill, then the facts in the case at bar justify such an inference.

It should be noted that after the affray involving the knife and chair incident, defendant started toward his home to obtain some money. He had obtained the money before that time, but then went on to his home to get the gun and shells for some purpose. The question of his intent became involved. On arriving at the Holland home, he turned over the money and then started backing up and drawing his gun and did fire at Holland and Scott with some intent. The fact that he did not kill them is not a determining factor. The jury might well have found that he did intend to murder them. Since he was found guilty of the lesser offense, he cannot now be heard to complain. The charge of assault with a deadly weapon is necessarily included in the charge as made. (*People* v. *But-*

*terfield,* 177 Cal.App.2d 553, 557 [2 Cal.Rptr. 569] ; *People* v. *Pope,* 66 Cal. 366, 367 [5 P. 621].)

The court was authorized to deny the motion for a verdict of not guilty and it acted with complete propriety in instructing the jury on a lesser included offense. (*People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281].)

Judgment affirmed.

Brown (Gerald), J., and Conley, J.,* concurred.

A petition for a rehearing was denied July 8, 1963, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1963.

*Assigned by Chairman of Judicial Council.