[Crim. No. 3673.   Third Dist.   Feb. 25, 1965.]

In re NOLAN KELLER on Habeas Corpus.

Kenneth M. Wells, Public Defender, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

REGAN, J.—The applicant, Nolan Keller, is held in the custody of the Department of Corrections pursuant to section 644, subdivision (b), of the Penal Code and seeks to have his status as an habitual criminal under section 644, subdivision (a), of the Penal Code redetermined. Under companion provisions of the Penal Code a conviction under Penal Code section 644, subdivision (a), carries a minimum term of nine years, whereas a conviction under section 644, subdivision (b), carries a minimum term of 12 years.[1]

On November 15, 1955, applicant was convicted of burglary and robbery and was adjudged an habitual criminal on the basis of four prior felony convictions for each of which he served a term in a state prison. He contends the first "prior" charged was improperly included since he was not sentenced "to serve a term in a state prison" therefor. (Pen. Code, § 644, subd. (b).) ▆ He also contends the third and fourth "priors" charged having arisen out of one transaction committed February 27, 1950 (burglary and grand theft), should be decreed one offense. This latter contention is conceded to be correct. ▆ Conduct giving rise to more

---

[1]Penal Code section 3047.5 provides: "Notwithstanding the provisions of Section 3047 of this code any person imprisoned as an habitual criminal under paragraph (a) of Section 644 and received on or after January 1, 1948, at a state prison or institution under the jurisdiction of the Director of Corrections shall not be eligible for a release on parole until he shall have served a minimum term of at least nine years."

Penal Code section 3048.5 provides: "Notwithstanding the provisions of Section 3048 of this code, any person imprisoned as an habitual criminal under paragraph (b) of Section 644 and received on or after January 1, 1948, at a state prison or institution under the jurisdiction of the Director of Corrections shall not be eligible for release on parole until he shall have served a minimum of at least 12 years."

than one offense within the meaning of section 654 of the Penal Code may result in initial convictions of both crimes, but only the more serious offense may be punished. The appropriate procedure is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. (See *People* v. *McFarland*, 58 Cal.2d 748, 762, 763 [26 Cal.Rptr. 473, 376 P.2d 449].)

■ Of the two offenses involved here, burglary second degree is the one subject to the greater punishment. The applicant is correctly charged with only the second and third prior convictions.

The correctness of applicant's first contention, that the first "prior" is improperly charged, is thus to be considered. It arose as follows: Applicant, on May 28, 1945, then aged 19 years, was convicted of robbery of the second degree and by the Superior Court of Los Angeles County committed to the California Youth Authority and thereafter on January 17, 1946, administratively transferred by the Youth Authority to San Quentin Prison without being returned to the trial court for resentencing. This conviction and the serving of time therefor in San Quentin Prison allegedly constitutes the first "prior".

The commitment to the California Youth Authority was pursuant to the provisions of section 1731.5 of the Welfare and Institutions Code, which reads as follows: "After certification to the Governor as provided in this article a court may refer to the authority any person convicted of a public offense who comes within all of the following description:

"(a) Is found to be less than 21 years of age at the time of apprehension;

"(b) Is not sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment;

"(c) Is not granted probation.

"If the authority believes that any person referred to it as provided in this section can be materially benefited by the procedure and discipline of the authority, and that proper and adequate facilities exist for the care of such person, it shall so certify to the court. The court shall thereupon commit said person to the authority."

At the time applicant was transferred to San Quentin Prison (and at the time he was committed to the Youth

524

Authority), the California Legislature had enacted Statutes of 1945, chapter 1454, page 2735. This statute added article 4 to chapter 1 of title 1 of part 3 of the Penal Code. It established the California Vocational Institution (now Deuel Vocational Institution) as an urgency measure and specifically found that there then existed an acute shortage of facilities for the confinement and care of persons committed to the Youth Authority and that "Present facilities are not designed to provide sufficient security to enable the Youth Authority to retain custody over persons committed to it . . . ." The statute included enactment of section 2036 of the Penal Code which reads: "The Deuel Vocational Institution shall be an intermediate security type institution. Its primary purpose shall be to provide custody, care, industrial, vocational and other training, guidance and reformatory help for young men, too mature to be benefited by the programs of correctional schools for juveniles and too immature in crime for confinement in prisons."

Section 3 of chapter 1454 of the Statutes of 1945 provides as follows: "Until such time as buildings and facilities for the California Vocational Institution are constructed and ready for occupancy, the Department of Corrections may establish the California Vocational Institution on a temporary basis either at one of the prisons or institutions under its jurisdiction or elsewhere as may be determined by the Director of Corrections. . . ."

Section 1700 of the Welfare and Institutions Code provides: "The purpose of this chapter [Youth Authority Act] is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. To this end it is the intent of the Legislature that the chapter be liberally interpreted in conformity with its declared purpose." (Stats. 1941, ch. 937.)

■ The California Youth Authority is an administrative agency of the executive branch of state government and not possessed of judicial power. (*In re Lee*, 177 Cal. 690 [171 P. 958]; *In re Larsen*, 44 Cal.2d 642 [283 P.2d 1043].)

■ The judicial power of the state (exclusive of the quasi-judicial power vested in some state agencies) is vested in the Senate, sitting as a court of impeachment, in a Supreme Court, District Courts of Appeal, superior courts, municipal courts, and justice courts. (Cal. Const., art. VI, § 1.)

■ The judicial power is generally power to adjudicate

on legal rights of persons or property. (*People* v. *Bird*, 212 Cal. 632 [300 P. 23].)

At the time applicant was placed in San Quentin Prison by the California Youth Authority, section 1737.1 of the Welfare and Institutions Code had been enacted into law and it reads as follows: "Whenever any person who has been charged with or convicted of a public offense and committed to the Authority appears to the Authority, either at the time of his presentation or after having become an inmate of any institution or facility subject to the jurisdiction of the Authority, to be an improper person to be retained in such institution or facility, or to be so incorrigible or so incapable of reformation under the discipline of the Authority as to render his retention detrimental to the interests of the Authority and the other persons committed thereto, the Authority may return him to the committing court. In the case of a person convicted of a public offense, said *court* may then commit him to a State prison or sentence him to a county jail as provided by law for punishment of the offense of which he was convicted. . . ." (Italics added.)

Section 1753 of the Welfare and Institutions Code provides: "For the purpose of carrying out its duties, the Authority and the director are authorized to make use of law enforcement, detention, probation, parole, medical, educational, correctional, segregative and other facilities, institutions and agencies, whether public or private, within the State. The director may enter into agreements with the appropriate public officials for separate care and special treatment in existing institutions of persons subject to the control of the Authority."

■ Thus we see that applicant was placed in San Quentin Prison by the California Youth Authority as a means of accomplishing the purposes of the Youth Authority Act, to-wit, training and treatment directed towards his rehabilitation and was never returned to the committing trial court for further commitment under the law either to a state prison or to a county jail *for the punishment of the offense of which he was convicted.*

The People contend, notwithstanding the above statement of fact and law, that the commitment of applicant to San Quentin Prison by the California Youth Authority, where he was detained for a period of less than ten months, constituted service of a term in prison within the meaning of Penal Code section 644.

This contention this court rejects.

■ A minor committed to the California Youth Authority does not receive a *sentence of imprisonment* nor does he *serve a term in a state prison* as is required under section 644 of the Penal Code, to constitute a prior conviction thereunder. (*People* v. *Lockwood*, 146 Cal.App.2d 189 [303 P.2d 621].) The minor so committed remains under the control of the California Youth Authority ". . . so long as in its judgment such control is necessary for the protection of the public." (Welf. & Inst. Code, §§ 1765, subd. (a), 1758, 1759.)

■ Control over the minor is limited only by his age; he must either be discharged, or committed to state prison on petition to the committing trial court on reaching his 25th birthday. (Welf. & Inst. Code, § 1771.)

■ Commitment by the trial court to the California Youth Authority is not analogous to a commitment by said court to a state prison; and the transferring by the California Youth Authority of such minor to a state prison does not place the minor in prison to serve a term within the meaning of section 644 of the Penal Code.

■ For the reasons above stated, it appears that petitioner is an habitual criminal who has been previously twice, but not four times, convicted of felonies enumerated in section 644 of the Penal Code and that he is therefore entitled to be accorded the benefits of the law applicable to persons who have suffered two rather than four prior convictions.

Since petitioner is not presently entitled to his release, the order to show cause is discharged and the petition for habeas corpus denied.

Pierce, P. J., and Friedman, J., concurred.