[Crim. No. 4158.   Third Dist.   Nov. 30, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. PETE DURAN ROMO, Defendant and Appellant.

Ronald F. Sypnicki, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Raymond M. Momboisse and Jack R. Winkler, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant Pete Duran Romo and his codefendants, Searcy and Earl, were inmates of Deuel Vocational Institution. After a knife fight in the institution they were indicted on two charges: count one, assault with intent to commit murder in violation of Penal Code section 217; count two, possession of a deadly weapon by a state prison

inmate in violation of Penal Code section 4502.[1] Searcy pleaded guilty. Romo and Earl were tried.

At the trial the court instructed the jury that it could find the defendants guilty of violating Penal Code section 4501 (assault with a deadly weapon by a state prison inmate) as a lesser included offense under count one of the indictment.[2] The jury returned verdicts finding the defendants guilty of violating section 4501, as a so-called lesser included offense within count one of the indictment, and of violating section 4502. Romo alone appeals from the ensuing judgment.

*Application of Penal Code Sections 4501-4502*
*to Youth Authority Wards in Deuel.*

Certified records in evidence demonstrate that Romo had been transferred to Deuel Vocational Institution as a ward of the California Youth Authority. He contends that at the time of his offense he did not have the status of a "person confined in a state prison" within the scope of sections 4501 and 4502. (Fns. 1 and 2, *supra.*)

Although ambiguous, the governing statutes evince a legislative intent consistent with defendant's contention. In 1945 the Legislature enacted Penal Code provisions for the establishment of a state correctional facility called "California Vocational Institution" and in 1951 adopted amendments changing its name to Deuel Vocational Institution. (Stats. 1945, ch. 1454; Stats. 1951, ch. 1663; see *In re Keller*, 232 Cal.App.2d 520 [42 Cal.Rptr. 921].) These provisions were section 2035 et seq., comprising article 4, chapter 1, title 1,

---

[1]Penal Code section 217 declares:

"Every person who assaults another with intent to commit murder, is punishable by imprisonment in the state prison not less than one nor more than fourteen years."

At the time of the offense (August 19, 1965) Penal Code section 4502 provided:

"Every person confined in a state prison . . . who . . . possesses or carries upon his person or has under his custody or control . . . any dirk or dagger or sharp instrument . . . is guilty of a felony and shall be punishable by imprisonment in a state prison for a term not less than five (5) years." (By Stats. 1965, ch. 330, p. 1438, the minimum punishment was decreased to three years.)

[2]Penal Code section 4501, as it read when the offense occurred, provided:

"Every person confined in a state prison of this state except one undergoing a life sentence who commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison not less than one year." (Stats. 1963, ch. 2027, § 1.) (The minimum penalty was increased to three years in 1965.) (Stats. 1965, ch. 330, § 1.)

part 3, of the Penal Code. The entire chapter is entitled "Establishment of State Prisons." Each article of that chapter, other than article 4, refers to a specific institution, for example, Chino, Folsom or San Quentin, as a "state prison." (See *In re De La O,* 59 Cal.2d 128, 138 [28 Cal. Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705].) In establishing the facility now known as Deuel Vocational Institution, article 4 did not refer to it as a state prison, but as "an institution for the confinement of males" under the custody of the Director of Corrections and the Youth Authority.[3] For housekeeping and internal management purposes the facility was placed under the jurisdiction of the Department of Corrections. (Pen. Code, §§ 2038-2040, 5003.) The facility was to have a twofold character, being designated as a medium security institution for custody of prisoners committed to the Department of Corrections and of wards committed to the California Youth Authority.[4] Having abstained from calling the institution a prison, the Legislature adopted various special provisions characterizing it in relationship to allied statutes.

A particularly ambiguous characterization appears in Penal Code section 2041, declaring in part: "The provisions of Part 3 of this code apply to the Deuel Vocational Institution and to the persons confined therein so far as such provisions may be applicable." Part 3 of the Penal Code comprises most of the laws governing state prisons, including sections 4501 and 4502. While arguably declaring the application of part 3 to Deuel and all its inmates, section 2041 restricts that application by the phrase "so far as such provisions may be applicable." That phrase denotes a necessity for independent appraisal of each of the statutes within part 3 of the Penal Code to determine whether that statute is designed to apply to Deuel Vocational Institution and its inmates.[5]

---

[3]Penal Code section 2035 provides:

"There is hereby established an institution for the confinement of males under the custody of the Director of Corrections and the Youth Authority to be known as the Deuel Vocational Institution."

[4]See Penal Code section 2035 (fn. 3, *supra*). Penal Code section 2036 provides:

"The Deuel Vocational Institution shall be an intermediate security type institution. Its primary purpose shall be to provide custody, care, industrial, vocational and other training, guidance, and reformatory help for young men, too mature to be benefited by the programs of correctional schools for juveniles and to immature in crime for confinement in prisons."

[5]The necessity for independent appraisal is demonstrated by section 4530, the general provision denouncing the crime of escape from a state

Of particular significance is Penal Code section 6082, which declares: "References in this title and in Title 5 of this part to prisons refer to all facilities, camps, hospitals and institutions for the confinement. treatment, employment, training and discipline of persons in the legal custody of the Department of Corrections." Title 5 of "this part," i.e., of part 3, includes sections 4501 and 4502, of which Romo stands convicted. Seemingly, it limits the class of institutions designated as "prisons" to those for the confinement of persons in the legal custody of the Department of Corrections, excluding those for the confinement of Youth Authority wards. Although not amended into its present version until 1956, section 6082 evidences a legislative intent to qualify the "prison" concept not only by the character of the institution itself but also by the character of the agency having legal custody of the particular inmate. There is little question but that the California Youth Authority retains legal custody of wards transferred by it to Deuel Vocational Institution. Welfare and Institutions Code section 1758 specifically declares: "Placement of a person by the Authority in any institution or agency not operated by the Authority, or the discharge of such person by such an institution or agency, shall not terminate the control of the Authority over such person." (See also Pen. Code, § 2037; Welf. & Inst. Code, §§ 1765, subd. (a), 1758, 1759; *In re Keller, supra,* 232 Cal. App.2d at p. 526.) Read together, Penal Code section 6082 and Welfare and Institutions Code section 1758 form a legislative classification of Deuel Vocational Institution as something other than a "prison" for the purpose of classifying those inmates not in the custody of the Department of Corrections.

Penal Code section 664, the recidivism law, applies to persons who have served prior terms in a "state prison." One of the special provisions governing Deuel Vocational Institution, Penal Code section 2037, specifically declares that the recidivism statute shall apply to persons who have served a term at Deuel after transfer thereto by the Director of

---

prison. Although section 4530 is in part 3 of the Penal Code, the Legislature, nevertheless, enacted section 2042, a special provision imposing punishment for the crime of escape from Deuel. If section 2041 had been intended to make section 4530 applicable to inmates of Deuel as inmates of a state prison, section 2042 would be tautological. Section 2042 should also be compared with section 1768.7, Welfare and Institutions Code, denouncing escapes from Youth Authority institutions.

Corrections.[6] Youth Authority wards, of course, arrive at Deuel by order of the Youth Authority, not the Director of Corrections.

In inquiring into a correctional facility's status as a "state prison" for the purpose of the recidivism law, the courts have discerned two governing factors: first, the character of the institution in which the offender was confined, and second, the nature of the proceedings leading to confinement. (*In re Gilliam,* 26 Cal.2d 860, 863 [161 P.2d 793].) *People* v. *Lockwood,* 146 Cal.App.2d 189 [303 P.2d 621], construes the statutes in relation to Youth Authority wards at the California (i.e., Deuel) Vocational Institution, holding that Youth Authority wards in this self-same institution do not serve a "state prison" term for the purpose of the recidivism law. The court declared: ". . . A distinction is thus made between a transfer to this institution made by the adult authority and one made by the youth authority. These sections have an important bearing on the character of this institution and strongly indicate that it was not intended to make the service of a term therein equivalent to a term in prison, except where the person was transferred thereto by the adult authority." (P. 191.)

Applying here the same two factors, the character of the institution and the nature of the proceedings leading to confinement, one notes the careful statutory avoidance of any designation of Deuel as a state prison; secondly, that the present defendant reached the institution through his commitment to the Youth Authority and his placement there by that agency. Although not free from ambiguity, the statutes express a legislative plan to classify Deuel as a state prison as to those inmates in the custody of the Department of Corrections and as an institution or facility outside the state prison category in relation to those inmates who are wards of the

---

[6]Penal Code section 2037 provides:

"There may be transferred to and confined in the Deuel Vocational Institution any male, subject to the custody, control and discipline of the Director of Corrections or the Youth Authority, whom the Director of Corrections or Youth Authority, as the case may be, believes will be benefited by confinement in such an institution. Whenever by reason of any law governing the commitment of a person to the Youth Authority or to an institution under the jurisdiction of the Youth Authority such person is deemed not to be a person convicted of a crime, the transfer or placement of such person in the Deuel Vocational Institution shall not affect the status or rights of the person and shall' not be deemed to constitute a conviction of a crime. Section 644 of this code shall apply to any person who has served a term in the Deuel Vocational Institution after transfer thereto by the Director of Corrections."

Youth Authority. Thus Penal Code sections 4501 and 4502 do not apply to Youth Authority wards confined in Deuel Vocational Institution. An element of proof essential to Romo's conviction under sections 4501 and 4502 is absent.

*In re Smith,* 64 Cal.2d 437 [50 Cal.Rptr. 460, 412 P.2d 804], neither requires nor tends toward an opposite result. That decision holds that a Youth Authority ward transferred to San Quentin was a "state prison" inmate within the scope of section 4501. San Quentin is designated as a state prison by express statute. (Pen. Code, § 2020.) Deuel Vocational Institution, in contrast, is designated as an "institution." (Pen. Code, § 2035, fn. 3, *supra.*)

A few Youth Authority wards at Deuel Vocational Institution have exhibited ingenuity in acquiring knife-like instruments and a disposition to use them, as illustrated by this case, by *People* v. *Bazaure,* 235 Cal.App.2d 21 [44 Cal.Rptr. 831], and by newspaper accounts of other incidents. In the light of experience, the wisdom of exempting such wards from the stringent statutes governing prison safety is open to question. The remedy, of course, is in the Legislature's hands.

### Section 4501 as a "Lesser Included Offense."

■ Defendant charges error in the jury instruction which permitted a verdict under section 4501 (assault with a deadly weapon by a state prison inmate) as a lesser included offense within section 217 (attempted murder). The Attorney General concedes that the former is not a lesser included offense, if only because the period of imprisonment fixed for violation of section 4501 is greater than that for violation of section 217. The former fixes a minimum sentence but no maximum. (See fn. 2, *supra.*) Such a statute, in effect, imposes life imprisonment as the maximum term. (Pen. Code, § 671.) A violation of section 217, on the other hand, carries a penalty of 1 to 14 years imprisonment. The instruction was erroneous in any event since, as we have held, the defendants were not inmates of a state prison and not subject to section 4501.

### Modification of the Judgment Under Count One.

■ A draft opinion in this case was prepared by Presiding Justice Pierce who now finds himself unable to agree in entirety with the other members of the court. With his permission, the following section of his draft (with deletions noted) is adopted as the opinion of the court:

"The Attorney General . . . urges that we can amend the judgment to hold defendant for an assault under Penal Code section 245 (assault with a deadly weapon) because it is a lesser included offense . . . under Penal Code section 217, the offense charged. . . . The contention is sound. A reviewing court's power to modify a trial court's judgment is statutory. (*People* v. *Odle* (1951) 37 Cal.2d 52 [230 P.2d 345].) Penal Code section 1260 seems to confer plenary power of modification on a reviewing court; it was not so intended. The section must be read in connection with Penal Code section 1181, subdivision 6. (*People* v. *Odle, supra,* 37 Cal.2d 52, at p. 58.) Penal Code section 1181, subdivision 6, provides as follows:

" 'When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed;'

"Because there was a finding of guilt under Penal Code section 4501 . . . the verdict was, in the language of section 1181, subdivision 6, 'contrary to law' and defendant was not guilty of the 'crime of which he was convicted.'

"Ordinarily, the phrase 'crime of which he was convicted' will connote the statutory offense with which defendant is charged or a lesser included offense thereunder. As we have noted above, the accusatory pleading specifies a violation of Penal Code section 217, and it has been held that section 245 is a lesser included offense under section 217. (*People* v. *Nichelson* (1963) 217 Cal.App.2d 273 [31 Cal.Rptr. 750]; *People* v. *Avila* (1960) 178 Cal.App.2d 700 [3 Cal.Rptr. 297]; *People* v. *Butterfield* (1960) 177 Cal.App.2d 553, 558 [2 Cal. Rptr. 569].) . . . Although section 217 was the offense mentioned in count one of the indictment, the terms of the indictment were broader. They included an assault upon the person of another with a deadly weapon. It is to the provisions of the accusatory pleading and not the definition of the offense enumerated therein that a court must look in determining whether an offense is necessarily included. (*People* v. *Marshall* (1957) 48 Cal.2d 394, 405 [309 P.2d 456].) By finding the defendant guilty of violation of section 4501 (under instructions properly defining the elements of that crime) the jury found defendant guilty of all elements of the crime

defined in that section—including guilt of assault with a deadly weapon. . . . All conditions to an application of section 1181, subdivision 6, have been met. We should therefore modify the judgment under count one to declare defendant Romo guilty of violating Penal Code section 245.''

*Misconduct of Prosecutor.*

The following quoted portion of the court's opinion is also excerpted from Presiding Justice Pierce's draft:

██ ''Defendant assigns as misconduct the following acts of the prosecuting attorney: 1. Misstatements in the opening statement of the prosecutor. He is said to have asserted facts to be proven regarding the number of wounds inflicted which were not actually proven. 2. After inmate Snow, called by the prosecution, had first refused to testify, the prosecutor then brought out the fact he *had* testified before the grand jury. 3. Sarcastic inferences during the cross-examination of inmates. The prosecutor stated that Deuel prisoners were characteristically untruthful regarding prison guards' brutality. 4. A declaration by the prosecutor to the judge during the course of the trial that the calling of a certain officer from Deuel as a rebuttal witness was a waste of time.

''We find no material misstatement in the prosecutor's opening statement as charged under item 1 above. The reference to the fact that Snow had testified before the grand jury (see item 2 above) probably implied he had testified favorably to the prosecution. At the time of the trial (1965) the prosecutor improperly made that implication (*People* v. *Flores,* 37 Cal.App.2d 282 [99 P.2d 326]—but as to its admissibility under the new Evidence Code, see sections 1235 and 770 thereof and the comment to said sections; Witkin, Cal. Evidence (2d ed. 1966) p. 511). Item 3 also constituted misconduct but we do not regard the sarcasm as having any possible serious impact upon the jury. Reference to defendants as ''potential killers'' (item 4) stated that which was amply supported by evidence in the record. (*People* v. *Wein* (1958) 50 Cal.2d 383, 395-396 [326 P.2d 457].) The statement to the judge regarding it being a waste of time to call a prison officer (item 5 above) drew a sharp rebuke from the judge to the effect that this was a trial where the liberty of defendants was at stake and that their calling of any witnesses they chose to call was not a waste of time.

''We find none of the acts charged, which we have found actually to constitute misconduct, prejudicial under Cali-

fornia Constitution article IV, section 13. Too frequently prosecutors forget that while the public they represent is entitled to vigorous advocacy just as is a private litigant, due process demands that an accused—also a member of the public presumed innocent—be afforded a fair trial. But this was not a close case. Although Searcy, called as a witness, sought to absorb all blame and testified he had done all of the stabbing (an absorption not altogether altrustic since he had already pleaded guilty and been sentenced), his testimony was contradicted by numerous other witnesses, leaving not the slightest possibility that the jury reasonably could have arrived at any verdict more favorable to defendants than the one reached. (See *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]; *People* v. *Bostick,* 62 Cal.2d 820, 823 [44 Cal.Rptr. 649, 402 P.2d 529].) Our study of the record convinces us that defendants were fairly tried.

''Romo appeared before the jury briefly in county jail garb. This was due to [an] . . . oversight . . . promptly noted and corrected by the trial judge. Defendant, whose status as a Deuel inmate was, of course, well known, could not possibly have been prejudiced in the eyes of the jury—which is not to say we condone the mistake.''

### Judgment on Appeal.

The judgment upon count one is modified to find the defendant guilty of the lesser included offense of assault with a deadly weapon in violation of Penal Code section 245. The judgment upon count two is reversed with directions to dismiss that count. The cause is remanded to the trial court with directions to arraign and pronounce judgment on defendant Romo in accordance with this decision.

Regan, J., concurred.

PIERCE, P. J.—I dissent in part and concur in part. I am unable to agree with that portion of the majority opinion which holds that Penal Code sections 4501 and 4502 do not apply to Deuel inmates. As the majority opinion points out, both sections relate to persons ''confined in a state prison,'' and I agree that Deuel Vocational Institution cannot be regarded as ''a state prison'' for all purposes. I disagree, however, that the Legislature did not intend it to be so regarded under sections 4501 and 4502.

It is true that Penal Code section 6082 does not effect that result in the case at bench. That section refers only to ''facili-

ties . . . for the confinement . . . of persons in the legal custody of the Department of Corrections.'' Defendant Romo was not one of those inmates of Deuel who are under the legal custody of the Department of Corrections. There are, as the majority opinion states, inmates at Deuel who are, as well as those under the custody of the Youth Authority.

Penal Code section 2041, however, provides that ''The provisions of Part 3 of this code [included within which are sections 4501 and 4502] apply to the Deuel Vocational Institution and to the persons confined therein *so far as such provisions may be applicable.*'' (Italics added.) Where I part company with the majority opinion is in the interpretation of section 2041, and particularly with the interpretation of the legislative intent as regards the italicized portion. We also differ as to the relevance of the rationale of *In re Smith* (1966) 64 Cal.2d 437 [50 Cal.Rptr. 460, 412 P.2d 804]. It, of course, did not relate to a person then an inmate of Deuel. Smith, like Romo, had been committed to the Youth Authority, but at the time he obtained and wielded his home-made knife he was at San Quentin. In *In re Smith* the court said (at pp. 439-440) : '' [T]he purpose of section 4501 of the Penal Code is to promote prison safety by discouraging assaults by prison inmates [citation], and to except any inmates from its operation would lessen its effectiveness and to some extent defeat its objective.''

We deal with an obviously ambiguous statute. The interpretation the majority opinion places upon it means this: 1. The Legislature intended to give the guards and inmates of Deuel lesser protection against vicious assaults by inmates like Romo than it did to the guards and inmates of Chino, Folsom, San Quentin. 2. It intended to protect them against knife wielding inmates who represent that portion of the prison population which happens to be under the custody of the Department of Corrections but not against that portion under the custody of the Youth Authority. Such distinctions are unreasonable. I cannot believe that was the legislative intent. By use of the phrase ''so far as such provisions may be applicable'' in section 2041, it did not intend to exclude sections 4501 and 4502.

I would hold, therefore, that both Penal Code sections 4501 and 4502 are applicable to Deuel inmates through section 2041. As the majority has held, the verdict and judgment under section 4501 cannot be affirmed because Romo was not charged under that section, and it is not a lesser included

offense under Penal Code section 217. Penal Code section 245 IS a lesser included offense. My obduracy regarding the validity of Penal Code section 4502 would lead necessarily to a ruling that the case should be returned to the trial court to arraign defendant and pronounce judgment and sentence under section 4502—the greater of the two offenses, section 245 and section 4502.[1]

A petition for a rehearing was denied December 27, 1967. Pierce, P. J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied January 24, 1968. Burke, J., was of the opinion that the petition should be granted.

---

[1]Although the jury returned a guilty verdict under section 4502, no judgment was pronounced thereunder under the correct appraisal of the trial court that to pronounce judgment under both section 4501 and section 4502 would constitute double punishment in violation of Penal Code section 654. I do not believe that Penal Code section 1191 or Penal Code section 1202, under the circumstances of this case, prevents the delayed pronouncement of judgment.