[Crim. No. 3528. Fourth Dist., Div. One. May 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CARROLL EUGENE REDD, Defendant and Appellant.

346

Gerald S. Mendell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Elizabeth Miller and Melvin R. Segal, Deputy Attorneys General, for Plaintiff and Respondent.

WHELAN, J.—Defendant appeals from a judgment imposing sentence following his conviction by verdict of grand theft.

The sole contention on appeal is that there was reversible error in permitting, over objection, the reading of the testimony of Homer L. Smith given at the preliminary hearing. Defendant asserts that it was not shown that due diligence was exercised to obtain the presence of Smith at the trial; that as a result defendant has been denied the right to be confronted with the witnesses against him and the jury deprived of the opportunity to observe the demeanor of Smith on the witness stand.

We agree that reasonable diligence was not exercised to obtain the presence of the witness and the requirements of section 1291, subdivision (a)(2), Evidence Code, therefore, were not met.

### The Matters Before the Court

The preliminary hearing was held on June 6, 1968, at which time Smith testified and was cross-examined by trial counsel for defendant.

On June 14 a trial date of August 5 was fixed. On August 5, defendant requested a continuance until August 12, which was granted. Trial commenced on that date.

Before any witness was sworn, defendant's counsel moved for a further continuance, giving as one of the reasons the unavailability of Smith. Without giving the sources of his information, defense counsel stated he had some information that Smith was in Arizona, and had other information that led him to believe Smith was in Long Beach, California; the other ground for the requested continuance was that counsel had for about a week and a half attempted unsuccessfully to obtain service on one Andrew Andreotti as a defense witness; Andreotti, he said, was reported to have been vacationing in San Diego. No statement was made as to what counsel expected Andreotti to testify.

The motion for continuance was denied.

### Nature of the Case

A proper consideration of the question whether reasonable diligence was shown to obtain the presence of Smith requires mention of some of the testimony at trial, including that given by Smith at the preliminary hearing.

Proof of the corpus delicti was made by Smith's testimony. He had been employed by the La Casa Inn for about three years, of which the last 2½ years were as manager, in which capacity he was employed on the date of the preliminary hearing.

Andrew Andreotti was the owner of La Casa Inn.

On July 10 or 11, 1967, defendant was employed by Smith as a clean-up man for La Casa Inn. Defendant was to come to work at 2 a.m. when the bar closed, for the purpose of sweeping out, packing up the empty beer bottles and cleaning up generally. During that process, he would be alone until the place opened for business at 6 a.m.; he would let the night bartender out the front door a few minutes after 2 a.m., then

lock the door; in the morning he would admit the morning bartender at 6 a.m. and leave at about 7 a.m.

At 6 a.m. of July 14, Smith was to open the bar for business. When he arrived and sought admittance, there was no response; both doors were locked and he had no key; he went to a nearby telephone and called the number of the bar; there was no answer; Smith then obtained a screw-driver from a service station, removed the hinges from the locked back door, removed the door and entered; no one else was within. There was evidence the cleaning-up process had been started. Smith immediately checked the two cash registers, a drawer alongside them in which money was kept, and a drawer in the office where other money was kept. All were empty of money.

There should have been at least $50 in coin as well as currency in each cash register, another $200 in coin in the drawer alongside, and paper currency in the office drawer. In all, Smith calculated there was $824.45 missing.

Smith went to an apartment house nearby where defendant had a room, the door to which was open. A suitcase and some clothes were on the bed; defendant was absent.

Defendant's duties did not include the handling of money.

The night bartender testified he was let out of the bar shortly after 2 a.m. on July 14 by defendant, who locked the door after him. Defendant had already locked the back door. When the bartender went out, defendant was the only person left in the bar. There was money in both cash registers and in the drawer alongside when the bartender left.

On August 14, 1967, defendant was in custody in Jefferson County, Colorado, in connection with a burglary there. Richard Thurman of the Jefferson County sheriff's department talked to defendant at Golden, Colorado. Thurman advised defendant that he had a detainer warrant for defendant from El Centro on a grand theft charge; defendant asked him how much it was for; Thurman told him "right at one thousand dollars"; defendant said, "I didn't take that much," and said his nearest recollection was that he had taken $350; that when he awoke in the morning after a night in San Luis, Sonora, he had right around $200; that before taking the money and after setting the bar stools on the bar preparatory to sweeping, he had had another drink and had then decided to take the money.

In testifying, Smith said he lived at 1502 Wensley in El Centro.

## Testimony to Show Reasonable Diligence

In a *voir dire* hearing, the district attorney presented the following testimony as a foundation for reading the testimony of Smith given at the preliminary hearing:

Sergeant Paul Hoover of the El Centro Police Department was given a subpoena to serve on Smith on or about July 23, 1968.

Sergeant Hoover, who had been acquainted with Smith for about four or five years, went to the address given on the subpoena, 1560 Adams (the La Casa Inn) on July 25, 1968 and inquired where Smith could be found. The bartender and two or three people sitting at the bar responded that Smith no longer worked there, and apparently was out of town. One of them suggested "Otto's Inn" as a possible location. Sergeant Hoover went there, but upon discovering that Smith's car was not parked "anywhere," he did not enter the place. He encountered Betty Brewer, who knew Smith "real well" and who drove one of his automobiles, and inquired of her if she knew where Smith could be located. She replied, "Last night he left town and I think he went to San Diego." Sergeant Hoover had no specific leads as to Smith's destination. Sergeant Hoover inquired of several persons whom he knew to be associated with Smith if they knew of his whereabouts. They could only offer him the information that Smith was "gone." Someone mentioned he might be in Winterhaven.

Officer Don Ellingwood of the El Centro Police Department attempted to serve a subpoena on Smith in reference to this case on August 9, 1968. He went to the La Casa Inn and spoke to the bartender, who informed him that Smith had "left for parts unknown."

Officer Ellingwood was told that "years ago" Smith came from "somewhere around Las Cruces" and possibly he went "back in that direction." The officer then went to 1204 Brighton, which he said was Smith's last known address, and inquired of two ladies he met there about Smith. They stated that they knew Smith, but could not offer any information as to where Smith was.

Officer Robert Espinoza of the El Centro Police Department, investigating officer in the present case, learned the Friday before the trial commenced (Friday, August 9) that Smith had not been served, and attempted to locate Smith. He directed Officer Ellingwood to collect some possible leads at the La Casa Inn. Officer Espinoza called the post office for a forwarding address on Smith; the only address they had was

1204 Brighton. He went with Officer Ellingwood to that address and met with negative results; on a return visit to that address he interviewed another woman who was of no assistance in his attempt to locate Smith.

Mr. Pattie, attorney for the defendant, had called Officer Espinoza and had given him the names of two girls who might have information as to Smith's location. However, Espinoza concluded these were the same girls Ellingwood had previously interviewed with negative results.

During the four or five years Hoover had known Smith, the latter was a bartender in El Centro.

No inquiries were made at 1502 Wensley, the address given by Smith at the preliminary hearing, at the Bartenders' Union, or from Andrew Andreotti, who had employed Smith at La Casa Inn.

Officer Espinoza made no inquiry of two girls whose names had been given him by defendant's lawyer, because he was told by Hoover the two girls had a small red car and he had seen Ellingwood talk to two girls in a small red car backing out of the driveway at 1204 Brighton.

### Reasonable Diligence Was Not Used

■ The efforts shown to have been made to secure Smith's presence do not amount to reasonable diligence. They did not develop when Smith ceased to be employed at La Casa Inn, nor the reason for termination of employment, whether, when on July 25 it was reported by a friend of Smith's he had gone to San Diego the night before, inquiry was made whether he was expected to return.

Very likely the methods used in attempting to serve the subpoena would in most cases be successful because most witnesses are easily available. They cannot, however, be said to be diligent efforts to produce a witness not easily available. While it has not been shown that Smith was a member of the Bartenders' Union, diligence would indicate the reasonableness of making inquiry there.

In the face of the record that Smith had given 1502 Wensley as his place of residence to the investigating officer, and on the witness stand, diligence would have indicated the desirability of inquiry there for him, even though the Brighton Street address had been obtained originally from a source not identified, but later verified by the post office.

Whether Smith had quit or been fired from his employment, his former employer was a reasonable source of inquiry, since he had certain obligations under the social security laws that

made it reasonable that he might have obtained a forwarding address from Smith.

## Does the Error Require Reversal?

■■■ Smith established the corpus delicti by his testimony that when he entered the premises in the morning, money that had been on the premises when the night bartender left the bar in the charge of defendant was missing along with defendant, and that the amount missing was between $800 and $900.

Defendant admitted to Thurman that he had taken $350 from the establishment, sufficient to constitute grand theft if proof of the corpus delicti might be established by his confession. We know that it may not.

In the case of *Motes* v. *United States,* 178 U.S. 458 [44 L.Ed. 1150, 20 S.Ct. 993], a witness failed to appear because of the negligence of the prosecution. Testimony by the absent witness was used in trial against a defendant who had not even been a defendant at the time the witness testified. The defendant thus obtained a reversal because he was denied the right of confrontation. Another defendant in the same situation took the witness stand and testimonially admitted his guilt. For that reason his conviction was affirmed.

There is, therefore, a situation different from that in *Motes* v. *United States, supra,* since the corpus delicti may be established by the voluntary testimony of defendant as a witness at the trial. (*People* v. *Hill,* 2 Cal.App.2d 141 [37 P.2d 849]; *People* v. *Kelly,* 70 Cal.App. 519, 523 [234 P. 110]; *People* v. *Kinsley,* 118 Cal.App. 593, 602 [5 P.2d 938]; *People* v. *Lawrence,* 141 Cal.App.2d 630, 633 [297 P.2d 144].)

It is true that in the case at bench defendant had full opportunity to cross-examine Smith and did cross-examine him at length.

However, the cross-examination did not cover the question as to the amount of money that had been taken from the office. It does not appear from the record whether Thurman, the witness from Colorado, to whom defendant made the statement he had stolen only about $350, testified at the preliminary hearing. If he had done so it is probable that that testimony would properly have generated further cross-examination of Smith.

■■■ That matter, however, is quite apart from the principle stated in *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], in the following language, and reaffirmed in

*Berger* v. *California,* 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540] : " 'The right to confrontation is basically a trial right. *It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial,* simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of testimony at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not . . . such a case.' (Italics added.) ''

Because of the importance of those principles, opportunity to cross-examine and the actual cross-examination do not take the place of a showing of reasonable diligence to produce the witness (*Berger* v. *California, supra*), just as reasonable diligence to produce the witness would not make his prior testimony admissible if, when it was given, a defendant had no opportunity to cross-examine.

The question whether it has been satisfactorily shown to the court that the prosecuting witnesses could not with due diligence be found within ' the state was one primarily addressed to the trial judge to be determined by him from the evidence presented. (*People* v. *Palacios,* 261 Cal.App.2d 566 [68 Cal.Rptr. 137] ; *People* v. *Dozier,* 236 Cal.App.2d 94, 102 [45 Cal.Rptr. 770].) It is a question of fact, the determination of which by the trial judge will not be interfered with unless the appellate court is satisfied from the record that as a matter of law due diligence had not been used to show the witness could not be found.

The trial judge correctly observed that it is not necessary that every possible means be exhausted to find a witness, and his observation that the witness might not wish to be found also may have been a correct inference. It may very well be that inquiry at some of the obvious places for inquiry that were neglected would not have produced any better results. Until such inquiry was made, reasonable diligence was not shown.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.