[Crim. No. 17365. Second Dist., Div. Four. Sept. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY ALLEN STEWART, Defendant and Appellant.

**COUNSEL**

Richard S. Buckley, Public Defender, James L. McCormick, Wilbur F. Littlefield and Richard A. Curtis, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON, J.**—Roy Allen Stewart pleaded not guilty to four counts of robbery (Pen. Code, § 211) and one count of murder (Pen. Code, § 187) and admitted two prior felony convictions. His motion to suppress certain evidence (Pen. Code, § 1538.5) was denied. The jury found the defendant guilty of one count of murder in the first degree and four counts of robbery in the first degree and fixed the murder penalty as life

imprisonment; the sentences on the robbery counts were ordered to run concurrently with the murder sentence.

The defendant appeals the judgment of conviction contending (1) that he was arrested without probable cause; (2) that his arrest and the search of his home incident thereto were unlawful; (3) that the consent of the joint occupant did not authorize a subsequent search of his residence; (4) that the prior testimony of an unavailable prosecution witness was improperly read to the jury; (5) that the defendant's prior felony conviction was used improperly to impeach his testimony; and (6) that the second degree murder instruction requested by the defendant was improperly refused. There is no merit in these contentions.

In December of 1962 and January of 1963 a number of purse-snatch robbery attacks were committed on middle-aged women in the section of Los Angeles served by the university division of the police department. Officer Logue studied the crimes and noted that the victims, in each instance, were rendered unconscious and severely injured by a blow on the head administered from the rear by someone using as a weapon a hard blunt object such as a rock. The victims, as a result, never saw their assailant, who appeared to work alone, and rarely was any property recovered at the scene of the attack.

On December 21, 1962, Mrs. Robert K. Wells was struck on the head while returning from work and her purse and its contents, including three corporate dividend checks payable to her husband, were taken. Mrs. Tsuru Miyauchi was on her way to work early on the morning of January 10, 1963, when she was knocked unconscious and her black leather lunch bag containing coin purse and key holder was taken. On January 19, 1963, Miss Mitchell was similarly attacked and died the next day from her injuries. Mrs. Dixon was attacked and her purse was taken on the evening of January 25, 1963.

Mrs. Lattimore, who resided nearby, partly witnessed the attack on Mrs. Ramirez and the theft of her purse in the early morning of January 30, 1963. Mrs. Lattimore called the police, described the assailant as a tall, slim, colored man wearing a red shirt and dark coat; she identified defendant Stewart at the trial.

On January 30, Mr. Wells brought to the police station the three stolen and cancelled dividend checks on which his name was forged. They had been cashed at Sam Newman's market and were countersigned by Lena M. Franklin. Sam Newman described the person who cashed the checks as a tall, thin, colored man. Lena M. Franklin was taken into custody on January 31, 1963, on suspicion of being involved in the forging and cashing of the checks, and admitted being present with a man she knew as

"Roy Wells" when the checks were cashed. After a 20-minute interview, Officer Logue released Lena Franklin and told her that she was free to leave the station whenever she wanted to leave; that he did not think that she had anything to do with the forgery of the checks or the robbery in which the checks were taken; that she was free to go. He provided her transportation back to her residence. She later voluntarily returned to tell the officers that, although she didn't know Roy Wells' address, she felt that she would recognize his house. Logue and several other officers drove Lena to the vicinity of the Wells residence. Finally she not only identified the house, but pointed to a man, who was the defendant Stewart, standing on the porch and said that he was "Roy Wells." Defendant Stewart was facing the street and two other men were leaving the house as Officers Logue and Beeson stopped their car at the curb, got out and walked toward the house. The defendant turned and walked back into the house, leaving the front door open, but closing the inner screen door.

Officer Logue had no arrest or search warrant; but, without knocking or identifying himself, he opened the screen door, walked into the house and called out "Roy Wells" to the defendant who was walking toward the back of the house. Believing that the defendant might be armed and dangerous, Officer Logue followed him and stopped him at the entrance to a back bedroom, then identified himself, showed his badge, and placed defendant Stewart under arrest for robbery.

A search of the premises following Stewart's arrest turned up Mrs. Wells' missing purse, a red coin purse stamped with the name of Takiko Miyauchi, Miss Mitchell's watch, and various other items stolen from the victims of the crimes charged.

Police at the time of Stewart's arrest also arrested Lillian Lara, who was present in the house, and several other persons. Later the officers showed Lillian Lara stolen items which they had retrieved from the house and told her the circumstances surrounding the robberies. Lillian Lara, who rented the house where the arrest occurred, told the officers that she did not want such items in her house and if the officers would accompany her to the residence, she would show them other property that did not belong to her and which she did not want there.

The officers accordingly took Lillian Lara, without handcuffs, to the residence, entered without a search warrant, and were led by Lillian Lara from place to place as she pointed out items not belonging to her, some of which had been stolen from the robbery victims.

■ The defendant asserts that the officers had no sufficient probable cause upon which to arrest him because Lena Franklin was neither a reli-

able informant nor a citizen informer. This matter was fully litigated at the 1538.5 hearing. We cannot say that, on the record before the trial court, that court was wrong in concluding that the officer reasonably believed Lena to be credible.

Defendant Stewart next contends that his motion for suppression of the evidence (Pen. Code, § 1538.5) should have been granted because the officers entered his residence in violation of Penal Code section 844. ■ Noncompliance with section 844 is excused if the officers act on a reasonable and good faith belief, based on the facts of the particular case, that compliance might increase his peril, frustrate an arrest, or permit the destruction of evidence. (*Duke* v. *Superior Court* (1970) 1 Cal.3d 314, 323 [82 Cal.Rptr. 348, 461 P.2d 628]; *People* v. *Rosales* (1968) 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Gastelo* (1967) 67 Cal.2d 586, 588-589 [63 Cal.Rptr. 10, 432 P.2d 706].)

Again, we cannot say the trial court erred in concluding that Officer Logue had good reason to believe, and to be apprehensive, that this man was dangerous and might be armed. ■ The trial court was correct in ruling that the officer had reasonable grounds to arrest defendant. ■ Since the arrest was lawful, a right to search incident to that arrest existed. The search took place prior to the decision in *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], which is not retroactive (*People* v. *Castillo* (1969) 274 Cal.App.2d 508, 511-513 [80 Cal.Rptr. 211]; *People* v. *Edwards* (1970) 71 Cal.2d 1096 [80 Cal. Rptr. 633, 458 P.2d 713]), hence the search of the entire premises was not excessive in scope. (*People* v. *Aguilar* (1961) 191 Cal.App.2d 887, 890 [13 Cal.Rptr. 121]; *People* v. *Montes* (1956) 146 Cal.App.2d 530, 531-532 [303 P.2d 1064].)

■ The subsequent search of the defendant's residence with consent of the joint occupant thereof was not, as the defendant contends, illegal. Lillian Lara told Officer Logue that she lived in a common law relationship with defendant Stewart, and she was, in addition, the primary lessee of the premises. The search of the premises authorized by the defendant's common law wife or mistress was legal (*People* v. *Smith* (1960) 183 Cal. App.2d 670 [6 Cal.Rptr. 866]), and the evidence shows that it was voluntarily given despite the fact that she was in custody at the time. (*People* v. *Ruhman* (1964) 224 Cal.App.2d 284, 287-290 [36 Cal.Rptr. 493].) ■ Moreover, the search did not exceed the scope of the authority to consent, but was limited to those common areas where Lillian Lara exercised

joint control and over which the defendant could maintain no private possessory right (*i.e.,* the top of the television set and a built-in cupboard).

■ The contention of the defendant that the prosecution failed to demonstrate that it used due diligence to obtain the presence of Mrs. Ramirez, who had returned to Mexico at the time of the trial, is not supported by the record. Mrs. Ramirez, when contacted in Guadalajara, agreed to return to Los Angeles to testify but was unable to enter the United States lawfully in time to participate. Substantial evidence supports the trial judge's finding that the prosecution made a timely and diligent effort to procure her attendance. (*People* v. *Smith* (1970) 4 Cal.App.3d 403, 408-409 [84 Cal.Rptr. 412]; *People* v. *Redd* (1969) 273 Cal.App.2d 345, 352 [78 Cal.Rptr. 368]; *People* v. *Casarez* (1968) 263 Cal.App.2d 130, 133 [69 Cal.Rptr. 187].) As a consequence, the testimony given by Mrs. Ramirez at the first trial, when the defendant had the opportunity to cross-examine her, was properly read into evidence at the second trial on the same charges.

Defendant, who testified in his own defense, contends that it was an abuse of discretion for the trial court to allow his prior felony convictions to be used for impeachment purposes. It has been held that the trial court has no discretion to prohibit this legitimate use of the defendant's prior convictions. (*People* v. *Romero* (1969) 272 Cal.App.2d 39, 45-46 [77 Cal.Rptr. 175].)

■ Finally, the trial court properly refused to give the requested second degree murder instruction. The defense theories that the attacker formed the intent to rob only after the assault upon his victim or that the robbery and the murder were committed by two different persons are not supported by the evidence, and instructions based solely on conjecture and speculation are improper. (*People* v. *Bross* (1966) 240 Cal.App.2d 157, 168-169 [49 Cal.Rptr. 402]; *People* v. *Renkin* (1965) 232 Cal.App.2d 328, 331 [42 Cal.Rptr. 657].)

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 10, 1970. Peters, J., was of the opinion that the petition should be granted.