[No. B004069. Second Dist., Div. Seven. Nov. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
SALVADOR VENTURA, Defendant and Appellant.

**COUNSEL**

Michael R. Totaro, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AISENSON, J.*—Appellant, a 16-year-old, was convicted of the crime of murder in the second degree after a jury trial, on September 29, 1983. Enhancement allegations pursuant to Penal Code section 12022, subdivision (a) (principal armed with a firearm, to wit, a handgun), and Penal Code sections 12022.5, and 1203.06 (personal use of said handgun) were found to be true. After a 90-day evaluation and report by the Youth Authority (Welf. & Inst. Code, § 707.2), on January 27, 1984, appellant was sentenced to the term prescribed by law (15 years to life) (Pen. Code, § 190), plus an additional 2 years to run consecutively on the enhancement (Pen. Code, §§ 12022.5, 1203.06) a total of 17 years to life in state prison. The enhancement pursuant to Penal Code section 12022, subdivision (a), was stayed.

On April 30, 1982, in the area of 6th and Union Streets in the City and County of Los Angeles between 10:30 and 11:30 p.m., appellant shot one Oscar Bernal in the chest. As the victim fled, appellant shot him from behind a second time in the area of the upper right thigh and then drove off. Victim succumbed to the gunshot wound to his chest.

## CONTENTIONS

Appellant appeals from the judgment of conviction and the order denying his motion for a new trial. He assigns four points of error: (1) that the court erred when it failed to give CALJIC No. 8.77 (diminished capacity) *sua sponte* when instructing the jury; (2) that the court erred in finding that appellant knowingly and intelligently waived his *Miranda* rights when admitting his confessions into evidence; (3) that the court erred in permitting the reading of the testimony of a crucial witness to the jury from the preliminary transcript, thereby divesting appellant of his constitutional right of confrontation; and (4) that the court erred in denying appellant's motion for a new trial based on the failure of the police to administer intoxication tests at the time of the appellant's arrest and preserve the results for appellant's use in his defense.

## DISCUSSION

### I

*Did the fact that the crime took place prior to June 9, 1982 (eff. date of Prop. 8) require the court to sua sponte read CALJIC No. 8.77 (diminished capacity) to the jury?*

Appellant presented the testimony of Dr. George Thompson, expert in the field of psychiatry, neurology and electroencephalography. Dr.

*Assigned by the Chairperson of the Judicial Council.

Thompson testified to the appellant's drinking and drug use, his examination, and tests and opined that the appellant did not have the specific intent to kill or harbor malice at the time of the incident in question.

Dr. Keith Ditman, psychiatrist, testified that the appellant "had been a person who was a chronic abuser of alcohol and drugs," that he made the determination "from the history that he [appellant] gave," and that appellant "was grossly intoxicated that night from the effects of several drugs, PCP being one of them, alcohol . . . marijuana . . . and possibly LSD . . . [that appellant's] thinking and judgment were impaired," and that he did not form a specific intent or harbor malice.

Dr. Alvin Davis, psychiatrist, testified that the appellant had a high tolerance to alcohol. Therefore, it did not impair the appellant's physical abilities but did impair his mental abilities, "particularly, inhibitions, moral restraint, concern for others, consideration of consequences, thinking ahead . . . ."

From the court's rulings and the discussions at bench, the court received the aforementioned testimony on the question of whether appellant had the requisite mental states at the time of the offense and precluded evidence and testimony designed to show an alleged preexisting incapacity on the part of appellant to formulate such mental states. These rulings form the basis of appellant's first contention of error.

Effective January 1, 1982, the Legislature did away with diminished capacity as a defense in crimes requiring specific mental states with the modification of Penal Code section 22[1] and the enactment of section 28[2] and section 29 of the Penal Code.[3]

---

[1]In 1982, as it does today, Penal Code section 22 provided: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. Evidence of voluntary intoxication shall not be admitted to negate *the capacity to form any mental states for the crimes charged,* including, but not limited to, purpose, intent, knowledge, *premeditation, deliberation or malice aforethought,* with which the accused committed the act.

"(b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed *a required specific intent, premeditated, deliberated or harbored malice aforethought,* when a specific intent crime is charged.

"(c) Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance." (Italics added.)

[2]Penal Code section 28 provided in pertinent part: "(b) As a matter of public policy there shall be no defense of diminished capacity . . . ."

[3]Penal Code section 29 provided: "In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have *the required mental states,* which include, but are not limited to, purpose, intent, knowledge, or *malice aforethought,* for the crimes charged. *The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact.*" (Italics added.)

■ Penal Code section 28 (abolishing the defense of diminished capacity) constituted a legitimate legislative determination on admissibility of a class of evidence and did not deny the appellant a due process right to a defense. (*People* v. *Jackson* (1984) 152 Cal.App.3d 961 [199 Cal.Rptr. 848].) "[S]ections 22, 28 and 29 [of the Penal Code] are valid enactments not depriving [appellant] of any due process rights. . . ." (*People* v. *Lynn* (1984) 159 Cal.App.3d 715, 733 [206 Cal.Rptr. 181].)

In the 1984 cumulative pocket part for the 4th edition of CALJIC No. 8.77, page 102, in the "use note" it reads: "In view of the adoption of Penal Code, § 28 in 1981 approval of CALJIC 8.77 (1979 Revision) is withdrawn."

■ Since the statutes involved herein predate the offense charged, the ex post facto thrust of appellant's contention is invalid and since the court was not required to give the instruction in the first instance, the objection that it was not given *sua sponte* is similarly invalid.

## II

*Did the appellant, a 16-year-old who was shown to have been drinking and taking drugs, knowingly, intelligently and voluntarily waive his "Miranda rights?"*

■ "[W]e have seen that a minor, even of subnormal mentality, does not lack the capacity as a matter of law to make a voluntary confession without the presence or consent of counsel or other responsible adult . . . . [T]he issue is one of fact, to be decided on the 'totality of the circumstances' of each case. We are of the opinion that the same rule governs the issue of the effectiveness of a minor's waiver of his rights to counsel and to remain silent after the accusatory stage has been reached in a pretrial investigation." (*People* v. *Lara* (1967) 67 Cal.2d 365, 389 [62 Cal.Rptr. 586, 432 P.2d 202].) "The issue, as with all matters of waiver, is to be resolved upon the whole record." (*Id.*, at p. 376; *In re Johnson* (1965) 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420].)

■ "[W]here . . . there is a conflict in the evidence, it is the duty of the reviewing court to determine if there is substantial evidence in the record to uphold the finding of the trial court, and the trial court's ruling will not be disturbed on appeal unless it is palpably erroneous. . . ." (*People* v. *Duren* (1973) 9 Cal.3d 218, 238 [107 Cal.Rptr. 157, 507 P.2d 1365]; *People* v. *Duran* (1983) 140 Cal.App.3d 485, 491 [189 Cal.Rptr. 585]; *People* v. *Duran* (1969) 269 Cal.App.2d 112, 116 [74 Cal.Rptr. 459]; *People* v. *Midkiff* (1968) 262 Cal.App.2d 734, 739 [68 Cal.Rptr. 866].) ■ The

record shows that there was conflicting testimony on this question and the factfinder resolved the issue against the appellant. The appellant produced witnesses to show that he was "loaded" on alcohol and drugs and that he had been a long-time abuser of these substances. The People produced prior inconsistent statements of the defense witnesses regarding defendant's intoxication at the time of the incident and produced investigators who observed him at the time of arrest and testified that he had an alcoholic breath but did not appear to be drunk.

The defendant testified at the evidentiary hearing outside the presence of the jury (Evid. Code, § 402):

"Q. Did you have any problem understanding your constitutional rights when Detective Fox read them to you?

"A. No. He told me this before.

"Q. All right. Listen to my question. Did you understand your constitutional rights?

"A. Well, yeah.

"Q. Did you have any difficulty understanding what he said to you?

"A. No.

". . . . . . . . . . . . . . . . . . . . . . .

"Q. You'd been read your rights before; is that right?

"A. (Witness nods head up and down.)

"Q. You have to answer out loud.

"A. Yes.

"Q. You knew what your rights were; is that right?

"A. Yes."

The appellant claimed that two officers made promises to him which rendered his waivers involuntary. Both officers denied making the statements attributed to them and the factfinder found against appellant. ■ " 'With respect to conflicting testimony . . . "[the reviewing court will] accept that

version of events which is most favorable to the People, to the extent that it is supported by the record." . . .' (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].)" (*People* v. *Cartwright* (1979) 98 Cal.App.3d 369, 383 [159 Cal.Rptr. 543].)

■ There appears to be no error in the trial court's having admitted appellant's statements.

### III

*Was due diligence exercised in attempting to obtain the presence of a missing witness and did the reading of that witness' testimony from the preliminary transcript deny the appellant his basic constitutional right of confrontation?*

■ Appellant contends that the People failed to make a showing of due diligence before introducing the testimony of Jose Cornejo, an eyewitness to the shooting, by reading his testimony from the preliminary hearing transcript. Section 240, subdivision (a)(5), of the Evidence Code provides that a witness is unavailable where he is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." ■ " ' " ' "Whether [reasonable or] due diligence has been shown is a factual question to be determined according to the circumstances of each case.' " ' " ' " (*People* v. *Forgason* (1979) 99 Cal.App.3d 356, 362 [160 Cal.Rptr. 263]; *People* v. *Enriquez* (1977) 19 Cal.3d 221, 235 [137 Cal.Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73].) ■ "[T]he word 'diligence' connotes persevering application, untiring efforts in good earnest, efforts of a substantial character." (*People* v. *Linder* (1971) 5 Cal.3d 342, 347 [96 Cal.Rptr. 26, 486 P.2d 1226]; *People* v. *Horn* (1964) 225 Cal.App.2d 1, 5 [36 Cal.Rptr. 898].)

■ The record shows that the trial was set for September of 1983. Beginning the previous April, a police investigator started looking for the witness. He first went to the location of the witness' residence and was advised by several neighbors at the location that the witness had moved. He went to six different apartments to determine if anyone had any knowledge of the witness' whereabouts and left business cards. He went to the address of the witness' employment, was informed that the witness no longer worked there and was given an alias. The investigator checked the defendant's name and alias on the computers of the Department of Motor Vehicles and obtained a second address. At the location of the second address he was advised by a number of people that no one was known by the witness' name or by the alias at that location.

Police department computers determined that the witness did not receive any tickets and had not been involved in any traffic accidents. The records indicated that the witness had not been listed as deceased within the last four years and criminal records showed that there had been no arrests within the last five years. There were no crime reports. The investigator returned to the location of the witness' residence several times to see if anyone had seen or come in contact with the witness. Federal government records were checked to determine if there was any record of the witness' deportation, and the post office records showed no change of address.

From the above facts, the trial court made a finding that the prosecution had exercised due diligence in attempting to find the witness. We agree. A court has substantial discretion in deciding what constitutes the unavailability of a witness within the meaning of this section (Evid. Code, § 240) requiring the exercise of reasonable diligence in order to admit former testimony (*Rutledge* v. *Electric Hose & Rubber Company* (9th Cir. 1975) 511 F.2d 668; *People* v. *Beyea* (1974) 38 Cal.App.3d 176 [113 Cal.Rptr. 254]) and unless there has been an abuse of discretion, the trial judge's ruling will not be disturbed (*People* v. *Smith* (1971) 22 Cal.App.3d 25 [99 Cal.Rptr. 171]; *People* v. *Palacios* (1968) 261 Cal.App.2d 566 [68 Cal.Rptr. 137]; *People* v. *Salas* (1976) 58 Cal.App.3d 460 [129 Cal.Rptr. 871], appeal after remand (1978) 77 Cal.App.3d 600 [143 Cal.Rptr. 755]).

▬ The question of whether the reading of the witness' testimony from the preliminary hearing transcript denied the appellant of his constitutional right to confrontation has long been settled.

Section 1291 of the Evidence Code provides in pertinent part: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and;

". . . . . . . . . . . . . . . . . . . . .

"(2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

▬ Preliminary hearing testimony is admissible at the trial only if the witness has been cross-examined at the preliminary hearing, his testimony is necessary at the trial, and the prosecution has made good faith effort with reasonable diligence to secure the witness' trial attendance. (*People* v. *Johnson* (1974) 39 Cal.App.3d 749 [114 Cal.Rptr. 545].) ▬ There is an identity of parties and issues between the preliminary hearing and the trial

of the same cause, even though the issue at a preliminary hearing involves probable cause to commit a defendant for trial as distinguished from the issue at a trial of guilt beyond a reasonable doubt. ■ For the purpose of determining the admissibility of the preliminary hearing testimony at the trial with respect to a witness who was not available to testify at trial, the interest and motive for cross-examination at the preliminary hearing are deemed sufficiently similar to the interest and motive for cross-examination of the same witness at the guilt trial so as to preclude the application of the witness confrontation constitutional right. (*People* v. *Salas, supra,* 58 Cal.App.3d 460.)

■ Since there was an identity of parties and issues between the preliminary hearing and the trial, the witness had been cross-examined, the testimony was necessary and a good faith effort with reasonable diligence to secure the witness' attendance at the trial was made, there appears to be no error in the trial court's having read the witness' testimony into the record from the preliminary transcript.

## IV

*Did the police have a duty at the time of the defendant's arrest to administer intoxication tests to defendant and preserve the results thereof for his use at the time of trial?*

■ As to "whether the duty to preserve evidence encompasses an initial duty to gather or *collect* or seize potential evidence for defendant's use which investigative officers discover at the scene of the crime. [w]e conclude it does not." (*People* v. *Bradley* (1984) 159 Cal.App.3d 399, 405 [205 Cal.Rptr. 485]; italics in original.)

"'*Hitch* [*People* v. *Hitch* (1974) 12 Cal.3d 641 (117 Cal.Rptr. 9, 527 P.2d 361)] and *Nation* [*People* v. *Nation* (1980) 26 Cal.3d 169 (161 Cal.Rptr. 299, 604 P.2d 1051)] imposed a duty to preserve evidence which the police had already obtained. Neither case imposed a duty to obtain such evidence or to conduct any particular tests. [Citation.] The police cannot be expected to "gather up everything which might eventually prove useful to the defense." [Citations.]' (*People* v. *Hogan* (1982) 31 Cal.3d 815, 851 [183 Cal.Rptr. 817, 647 P.2d 93]) . . . . [¶] *Hitch* does not . . . impose a 'duty to affirmatively exert effort to discover potential evidence . . . for the purpose of preserving such evidence for the defense' (*People* v. *Maese* (1980) 105 Cal.App.3d 710, 720 [164 Cal.Rptr. 485]), nor a duty 'to test the evidence in the absence of a defense request. . . .' (*People* v. *Newsome* [(1982) 136 Cal.App.3d 992, 1006 (186 Cal.Rptr. 676)].) Moreover, '[t]he prosecution is not required to engage in foresight and gather up everything

which eventually might prove useful to the defense.' (*People* v. *Watson* (1977) 75 Cal.App.3d 384, 400 [142 Cal.Rptr. 134].)" (*People* v. *Bradley, supra,* 159 Cal.App.3d at p. 405.)

Here, at the time of the arrest of the defendant, officers noted that he had an alcoholic breath but was not intoxicated. The factfinder found this assertion true. The officers could not have foreseen that the defendant would raise an intoxication issue by way of defense. Therefore, appellant's contention that the officers should have taken and preserved the results of intoxication test samples is also invalid.

The judgment affirmed and the order denying motion for new trial is affirmed.

Lillie, P. J., and Thompson, J., concurred.